IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JANICE SOUTHALL TURNER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:15-cv-00821-JHE |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Janice Southall Turner ("Turner") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Turner timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Turner filed her application for a period of disability and DIB in October 2011, initially alleging she became unable to work beginning May 8, 2010. (Tr. 130) She later amended her claim to allege disability beginning January 1, 2011. (Tr. 13). Turner was a forty-five year old female on June 26, 2013, her hearing date. (Tr. 35). Turner has a high school education as well

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

1

as training to be a certified nurse's aide. (Tr. 165). Turner's past relevant work was as a sexton, packaging machine operator, certified nurse's assistant, and caregiver. (Tr. 23, 63-64). The Agency initially denied Turner's application and Turner requested a hearing, where she appeared in June 2013. (Tr. 31-71). After the hearing, the Administrative Law Judge ("ALJ") denied Turner's claim on August 30, 2013. (Tr. 13-24). Turner sought review by the Appeals Council, but it denied her request on March 13, 2015. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On March 18, 2015, Turner initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Turner last met the insured status requirements of the Social Security Act on December 31, 2015 (her date last insured or "DLI") and Turner had not engaged in substantial gainful activity after her alleged onset date of January 1, 2011. (Tr. 15-16).[4] At Step Two, the ALJ found Turner has the following severe impairments: cervical degenerative disc disease; cardiomyopathy; asthma; migraines; depression; and anxiety (20 C.F.R. § 404.1520(c)). (Tr. 15). At Step Three, the ALJ found Turner did not have an impairment or

---

[4] In his decision, the ALJ states "The claimant *has* engaged in substantial gainful activity since January 1, 2011, the amended alleged onset date." (Tr. 15) (emphasis added). However, the ALJ makes no further mention of substantial gainful activity and continues with his analysis of Turner's claim. Additionally, the Acting Commissioner's brief states that the ALJ found that Turner "*had not* engaged in substantial gainful activity since January 1, 2011." (Doc. 10 at 2) (emphasis added). Based on these circumstances, the undersigned treats the absence of "not" in the ALJ's finding as a clerical error.

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16).

Before proceeding to Step Four, the ALJ determined Turner's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, through her DLI, Turner had the RFC

> to perform medium work as defined in 20 C.F.R. 404.1567(c) except she can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights.  She would need a temperature controlled environment with only occasional exposure to extreme cold or heat.  She should have no more than occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, or poorly ventilated areas.  She can understand, remember, and carry out simple instructions for two hour periods with normal breaks to complete an eight-hour day. She can perform occasional decision making and handle occasional changes in the work setting that are gradually introduced and well-explained.  She can maintain occasional interaction with the public, co-workers, and supervisors.

(Tr. 18).

At Step Four, the ALJ determined that, through the date last insured, Turner is unable to perform any past relevant work.  (Tr. 23).  At Step Five, the ALJ determined, based on Turner's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Turner could perform, including bakery worker, mail sorter, and sorter.  (Tr. 23-24).  Therefore, the ALJ determined Turner has not been under a disability and denied her claim. (Tr. 24).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial

evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Turner argues that the ALJ improperly assigned little credibility to the opinions of Turner's treating neurologist, Dr. Diane Counce, and Turner's treating primary care physician, Dr. Donald Kwong. (Doc. 9 at 6). Turner also contends that the ALJ improperly ignored the Eleventh Circuit's pain standard in assigning little credibility to Turner's own testimony. (Doc. 9 at 10).

**A. The ALJ Properly Evaluated the Opinions of Turner's Treating Physicians**

Turner argues it was improper for the ALJ to assign little weight to the opinions of Dr. Counce and Dr. Kwong because the ALJ failed to develop the record to resolve inconsistencies between their opinions and other evidence. (Doc. 9 at 6). By rejecting those opinions, Turner claims the ALJ improperly substituted his own diagnostic impressions for those of the physicians and "played doctor." (*Id.* at 7). Turner argues any perceived inconsistencies could have been resolved had the ALJ used one of the methods contained in 20 C.F.R. § 404.1520b(b) and (c) to further develop the record, which Turner states is required when a medical source opinion conflicts with other evidence. (*Id.* at 6-7).

A treating physician's opinion "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (holding that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician)). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's

impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As a preliminary matter, Turner is incorrect when she states 20 CFR § 404.1520b(b) and (c) impose a duty on an ALJ faced with inconsistent evidence to "fully develop the record to attempt to resolve those inconsistencies." (Doc. 9 at 6). Although an ALJ has an obligation to fully and fairly develop the record, the regulations Turner cites do not impose on an ALJ a duty to take any additional actions at all to resolve inconsistencies in the record. *See Cates v. Colvin*, No. 4:14-CV-01866-LSC, 2016 WL 48161, at *6 (N.D. Ala. Jan. 5, 2016) ("An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record."). An ALJ has discretion to investigate further when his or her efforts to "weigh the relevant evidence and see whether [he or she] can determine whether you are disabled based on the evidence we have" fail. 20 CFR § 404.1520b(b). The regulations explicitly contradict Turner's claim; rather than being *required* to investigate further in the case of inconsistent evidence, an ALJ *may* investigate further "[i]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled." 20 CFR § 404.1520b(c). Turner cites *Carrill v. Barnhart*, 201 F. Supp. 2d 1190 (N.D. Ala. 2002) for the

proposition an ALJ must develop the record further in an effort to resolve problems with medical opinions before discounting them. In *Carrill*, the ALJ rejected the only medical evidence relating to the claimant's mental health impairment in concluding that the claimant was not disabled due to that impairment. *Id.* at 1191. This case is distinguishable, because here the record contained other medical evidence against which the ALJ weighed the opinions of Turner's treating physicians, as discussed further below.

Turner suggests the ALJ "played doctor" by substituting his diagnostic impressions for those of the treating physicians and supports this by citing *Bennett v. Barnhart*, 288 F. Supp. 2d 1246 (N.D. Ala. 2003). In *Bennett*, the ALJ determined the plaintiff could not be in disabling pain because no surgery was recommended for her complaints, relying on "no medical evidence of record" for this conclusion. *Id* at 1251. Here, as discussed in more detail below, the ALJ considered conflicting evidence, including medical evidence, in assigning weight to Turner's treating physicians' medical opinions. The remainder of the list of cases Turner cites to bolster her contention in fact refute it; in each case, unlike the situation here, the ALJ either rejected the only medical evidence in the record or made an on-the-spot diagnosis. *See Carlisle v. Barnhart*, 392 F. Supp. 2d 1287, 1294 (N.D. Ala. 2005) ("The ALJ rejected the only PCE and pain assessment in the record."); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (improper for ALJ to base his determination on his own assessment of what symptoms a claimant ought to manifest at the hearing); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (ALJ erred in going "against the only medical evidence in the case," although an ALJ "is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—which need not itself be medical in nature[.]").

### 1.  Dr. Counce's Opinion Was Properly Assigned Little Weight

Dr. Counce treated Turner several times for migraine headaches between 2007 and 2013. (*See* tr. 391-428).  On August 16, 2013, she issued a medical source statement opining Turner experienced fifteen headaches per month of up to two weeks in duration.  (Tr. 472-76).  Dr. Counce further stated Turner would not be able to perform basic work activities when experiencing a headache, would require 1-2 unscheduled breaks per day, would be absent from work approximately three times per month, and needed a workplace with various headache-related environmental requirements.  (Tr. 474).  The ALJ assigned little weight to this opinion, stating it was inconsistent with both Dr. Counce's treatment notes and Turner's activities of daily living.  (Tr. 21).  Beyond her general argument the ALJ had a duty to develop the record further to resolve these inconsistencies, Turner makes no specific claims why the ALJ's assessment of Dr. Counce's opinion was erroneous.

Although the ALJ stated Dr. Counce's opinion was inconsistent with Turner's activities of daily living, he made no specific mention of which activities created this inconsistency.  In support of the ALJ's finding, the Commissioner points to Turner's November 2011 function report, in which Turner reported taking care of her one-year-old son; preparing frozen dinners and sandwiches daily; no problems with personal care; the ability to drive a car; performing "some cleaning and laundry" with limited lifting; paying bills; counting change; handling a savings account; using a checkbook; no problems getting along with family, friends, or neighbors; following written instructions "very well"; and "good" ability to handle changes in routine. (Doc. 10 at 7).  Not only does the ALJ himself cite none of these activities in connection with Turner's migraines, it is difficult to tell which of these activities actually conflict with Dr. Counce's opinion.

The ALJ was on firmer footing in citing inconsistencies between Dr. Counce's treatment notes and her opinion. During the course of Turner's treatment, Dr. Counce prescribed various medications for Turner. On December 21, 2011, Turner reported Zofran was effective. (Tr. 401). On February 2, 2012, Turner reported less intense headaches, which occurred monthly around her menstrual cycle; Anaprox helped with these. (Tr. 398). On March 6, 2013, Turner complained of more headaches, although she was not on any medication at the time. (Tr. 395). Dr. Counce prescribed Imitrex. (*Id.*). On April 30, 2013 (Turner's last visit before Dr. Counce's August 2013 opinion), Turner stated her headaches were better and Imitrex had curbed the pain when she experienced a severe headache. (Tr. 391).

Turner's history with Dr. Counce was characterized by seeking treatment, being prescribed medication, and reporting fewer or less intense headaches which were effectively treated by medication. The ALJ noted Dr. Counce's August 2013 opinion offered a "fair to good" prognosis with medication compliance and no side effects from Turner's medication, yet also suggested Turner experienced multiple protracted and debilitating headaches every month. (Tr. 21, 474). Disregarding the ALJ's nebulous reference to Turner's unspecified conflicting daily activities, the inconsistencies between Dr. Counce's treatment notes and her August 2013 opinion provided independent good cause for the ALJ to afford this opinion less than controlling weight.

### 2. Dr. Kwong's Opinion Was Properly Assigned Minimal Weight

Turner argues the ALJ erred by assigning minimal weight to Dr. Kwong's assessment Turner could not sit or stand sufficiently to complete an eight-hour workday, required a back brace, and was restricted to lifting and carrying less than ten pounds. (Doc. 9 at 9; Tr. 480-82). Turner states it was improper for the ALJ to assign minimal weight to Dr. Kwong's report

because the ALJ merely speculated Dr. Kwong's opinion "appear[s] to rely substantially upon the claimant's report and not the available objective evidence." (Doc. 9 at 9). Turner claims the ALJ could have recontacted Dr. Kwong to determine what he in fact relied upon, but instead made that finding without evidence. (*Id.*).

Turner is mistaken an ALJ must have absolute certainty that a physician's opinion is based on a claimant's subjective report—to the point where the ALJ must recontact a physician for proof—in order to discount it. An ALJ may consider as a factor weighing in favor of discounting a physician's opinion whether it *appears* to be based on subjective evidence of pain. *See Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007) (per curiam) (unpublished) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004)). Here, the ALJ determined Dr. Kwong's opinion was based on Turner's subjective report in part because Dr. Kwong had no treatment history with Turner on her complaints of cervical stenosis and lumbago; this was her "first visit" for those problems. (Tr. 21, 477). Also, Dr. Kwong's recommendations conflicted with the objective medical evidence. Dr. Kwong recommended Turner use a back brace, but there was no underlying condition to support that requirement. (Tr, 21). The ALJ referenced his prior finding at Step Two, when he considered Turner's claimed lumbago and concluded it was not a severe impairment:

> Additionally, the clinical notes indicate a prior history of lumbago (Exhibit 12F). However, the available objective medical evidence does not establish an underlying medical condition, which would reasonably account for these symptoms. X-rays of the claimant's lumbar spine performed on October 14, 2011, revealed there was normal alignment with no fracture or subluxation (Exhibit 13F). Magnetic resonance imaging (MRI) of the claimant's lumbosacral spine taken on March 21, 2013, which was interpreted by Camillo Gomez, M.D., showed both that the spinal cord was of normal size and the disc spaces were also well maintained. Indeed, Dr. Gomez classified the MRI findings as normal. Accordingly, the undersigned finds there is not a medically determinable

>impairment supported by objective evidence that would result in lower back pain.

(Tr. 16, 21-22).

Dr. Kwong's opinion was not bolstered by the evidence, and the ALJ had good cause to discount it.

Turner contends even if Dr. Kwong based his opinion on Turner's subjective report rather than objective evidence, the ALJ should still credit Dr. Kwong's recommendations for mitigating Turner's alleged disabilities. (Doc. 9 at 9). Turner relies on the Eleventh Circuit's pain standard to support this contention. (*Id.* at 10). In other words, Turner argues the ALJ should credit Dr. Kwong because the ALJ should believe Turner's testimony. This is, if not quite circular, essentially part of Turner's argument the ALJ improperly discounted her testimony, which the Court addresses below.

### B. The ALJ Properly Discredited Turner's Testimony

Turner argues the ALJ improperly discredited her subjective testimony regarding her pain and that this rejection was inconsistent with the Eleventh Circuit's pain standard. (Doc. 9 at 12). Where, as here, a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the Eleventh Circuit "has established a three part 'pain standard.'" *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain.

*See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all available subjective and objective evidence. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p. This may include the nature of a plaintiff's symptoms, the effectiveness of medication, her method of treatment, her activities, and any conflicts between a plaintiff's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4). If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

After considering the evidence presented, the ALJ found Turner's impairments could cause the alleged symptoms; however, the ALJ found her statements were not credible. (Tr. 20-21). Specifically, the ALJ found Turner's testimony about her physical limitations conflicted with both the objective medical evidence and the record as a whole. (Tr. 20). Turner challenges

13

the adequacy of what she appears to concede are two of the ALJ's specifically articulated reasons for discrediting Turner's testimony about her physical difficulties: Turner's activities in her past work and that she "lived and functioned independently while caring for three children." (Doc. 9 at 10).

Turner states evidence of her activities in her previous jobs conflict with the ALJ's determination that Turner is unable to perform her past work. (*Id.*). Turner cites no authority for the proposition an ALJ may not consider a claimant's reasons for leaving previous work in analyzing that claimant's credibility and misstates the ALJ's reference to her previous work. In context, the ALJ notes Turner did not leave either her job at the spice factory or her job as a sitter because of a change in her exertional abilities. (Tr. 20). Turner left her job at the spice factory due to her pulmonary issues and her job as a sitter due to the death of the patient whom she was looking after. (*Id.*). The ALJ also observed there was no evidence in the record to indicate a change in Turner's exertional abilities since leaving her job as a sitter, where Turner frequently lifted 25 pounds. (Tr. 20, 191). The ALJ was not forbidden from finding this cut against Turner's claims about her pain's limitations on her physical abilities. It was not improper for the ALJ to discredit Turner's testimony on this basis, and his decision to do so was supported by substantial evidence.

Turner offers *Hogard v. Sullivan*, 733 F. Supp. 1465 (M.D. Fla. 1990), to argue that an ALJ may not use the fact that a claimant raised children to reject her testimony. In *Hogard*, the court reversed a denial of benefits because the only evidence relied upon by the ALJ in rejecting the plaintiff's subjective claims of pain was that following his DLI, the plaintiff married, adopted a child, fathered a child, and cared for the couple's two children. *Id.* at 1469. This case is distinguishable, as the ALJ relied on evidence beyond the fact that Turner merely cared for her

three children in evaluating her credibility under the pain standard. Turner need only look to the remainder of the sentence containing the reference to her children to see this: "the record reflects that the claimant lived and functioned independently." (Tr. 20). Additionally, the plaintiff in *Hogard* suffered from Meniere's disease, colitis, headaches, a skin infection, anxiety, and allegies—none of which relate to exertional activities that may be implicated in caring for children. 733 F. Supp. at 1467. Conversely, Turner's daily activities in caring for her children are directly relevant to the exertional limitations she claims are caused by her pain. On her November 2011 function report, Turner reported an inability to lift objects heavier than 10 pounds. (Tr. 185). However, Turner stated she had been lifting a 30-40 pound child for quite some time at her October 2011 consultation with Dr. Michael McKinney. (Tr. 335). The ALJ properly accounted for this in discrediting the credibility of Turner's testimony, and his decision to do so was supported by substantial evidence.

The remainder of Turner's brief is a mechanical recitation of the pain standard itself, and it is not clear precisely how—or if—Turner alleges the ALJ violated the standard apart from challenging the adequacy of the two reasons she identifies above. (Doc. 9 at 10-12). The Court will not attempt to deduce which other arguments Turner intended to make; an argument undeveloped in a party's brief is abandoned. *See Hutchinson v. Astrue*, 408 F. App'x 324, 326 n.1 (11th Cir. 2011) (citing *Davis v. Jones*, 506 F.3d 1325, 1330 n.8 (11th Cir. 2007)).

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Turner's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 30th day of September, 2016.

                                                **JOHN H. ENGLAND, III**
                                                UNITED STATES MAGISTRATE JUDGE